# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs at Knoxville November 17, 2015

## STATE OF TENNESSEE v. CARLOS GONZALEZ

**Appeal from the Criminal Court for Shelby County**
**No. 1201055      James C. Beasley, Jr., Judge**

_____

**No. W2014-02198-CCA-R3-CD  -  Filed December 15, 2015**

_____

Appellant, Carlos Gonzalez, stands convicted of one count of second degree murder, three counts of attempted second degree murder, one count of misdemeanor reckless endangerment (a lesser-included offense of attempted second degree murder), three counts of aggravated assault, and three counts of employing a firearm during the commission of a dangerous felony.  He was acquitted of one count of employing a firearm during the commission of a dangerous felony.  The trial court sentenced him to an effective sentence of fifty-two years.  On appeal, appellant argues that the trial court erred in its admission and exclusion of evidence, that the evidence was insufficient to support his conviction for second degree murder, and that the trial court erred in its sentencing.  Following our review, we affirm the judgments of the trial court but remand for correction of the judgment documents.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed; Case Remanded

ROGER A. PAGE, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROBERT H. MONTGOMERY, JR., JJ., joined.

Michael Edwin Scholl (on appeal), Memphis, Tennessee; Stephen C. Bush, District Public Defender, and Michael J. Johnson, Assistant District Public Defender (at trial), for the Appellant, Carlos Gonzalez.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Amy P. Weirich, District Attorney General; and Jose Francisco Leon and Neal Oldham, Assistant District Attorneys General, for the Appellee, State of Tennessee.

# OPINION

This case concerns a shooting outside of a nightclub in Memphis during which eleven shots were fired and one person, Miguel Villa, was killed. Appellant was identified as the shooter. Appellant was indicted for (Count 1) the second degree murder of Miguel Villa; (Count 2) the attempted second degree murder of Jesus Villa; (Count 3) the attempted second degree murder of Jose Villa; (Count 4) the attempted second degree murder of Ricardo Ortega; (Count 5) the attempted second degree murder of Shaniki Brown; (Count 6) the aggravated assault of Jesus Villa; (Count 7) the aggravated assault of Jose Villa; (Count 8) the aggravated assault of Ricardo Ortega; (Count 9) the aggravated assault of Shanika[1] Brown; (Count 10) employing a firearm during the commission of a dangerous felony involving Jesus Villa; (Count 11) employing a firearm during the commission of a dangerous felony involving Jose Villa; (Count 12) employing a firearm during the commission of a dangerous felony involving Ricardo Ortega; and (Count 13) employing a firearm during the commission of a dangerous felony involving Shanika Brown.

## I. Facts

Jesus Villa testified that on August 13, 2011, he went with his brothers, Miguel and Jose Villa, and friends to San Francisco, a club on Winchester Boulevard. When they exited their vehicle, "several people" approached them, shouting at them and insulting them. The strangers then began to assault the Villa group. They were "uttering" the words, "Playboy Surenos," the name of a Hispanic gang. Jesus Villa testified that he saw appellant shoot towards his group. Appellant was in his car, and the gun was a black pistol. Jesus Villa identified appellant as the shooter both in the courtroom during his testimony and also in a photographic lineup soon after the shooting. Jesus Villa said that his brother Miguel was shot.

Jesus Villa further testified that he and his brothers were not in the Playboy Surenos gang. He said that another Hispanic gang was Los Pelones and that the Villa brothers were not in that gang either; however, he knew people in Los Pelones. Jesus Villa said that appellant was not involved in the "brawl" and that appellant was the only person with a firearm. He said one person in the attacking group had a bat and another had a metal pipe. There were more than twenty people in the attacking group.

Ricardo Ortega testified next. His recollection of events was substantially similar to that of Jesus Villa; however, Mr. Ortega said that he attempted to use pepper spray on the attacking group. In addition, he estimated that there were fifteen to twenty people in

---

[1] The indictment misspells Ms. Brown's first name as Shaniki.

the attacking group. Mr. Ortega also identified appellant as the shooter in a photographic lineup soon after the shooting and again in court during his testimony. Appellant was the only person who was shooting a gun, according to Mr. Ortega. On cross-examination, Mr. Ortega stated that the gunfire began about a minute after he sprayed the attacking group with pepper spray and that he had been in the process of backing away at that point. He originally thought two weapons were being fired. He affirmed that he was running away and looking back when he saw the shooter. He agreed that he used the nickname "Duende" in his statement to police rather than appellant's formal name.

Jose Villa testified consistently with the previous testimonies. He stated that he saw appellant shoot once and that he knew appellant fired the other shots. Jose Villa said that two people from the attacking group held him and beat him. He tried to defend himself. He said that he and his attackers had separated before the first shot was fired.

Shanika Brown testified that on August 13, 2011, she was driving down Winchester Boulevard when she heard gunshots. A bullet went through her windshield, and she immediately called 9-1-1. The dispatcher advised her to drive home, and the police met her at her house. Ms. Brown testified that she had glass particles in her mouth, hair, and legs but that she was not seriously injured. She stated that she was terrified by what happened.

Memphis Police Officer Alexander Robert Coughlin III testified that he was responding to a call at the Taco Bell in the Winchester/Ridgeway area when he heard gunshots at a shopping center across the street. He drove to the shopping center and saw a man lying on the ground. Officer Coughlin checked the man for a pulse, but the man was already deceased. Officer Coughlin testified that the people standing near the man appeared to be the man's family but that everyone else in the vicinity was "booking it" away from the scene. After other officers arrived to assist in preserving the scene, Officer Coughlin traced the victim's steps back to two trucks, approximately fifty to seventy-five yards away, and found "numerous shell casings." He testified that he had heard six gunshots.

Memphis Police Officer Justin Sheriff testified that he was a crime scene officer the night of the shooting in question and responded to the scene in that capacity. He discovered eleven 9mm shell casings at the scene.

Dr. Karen Chancellor, the Chief Medical Examiner for Shelby County, testified that she autopsied the victim. She said that a bullet entered the back of the victim on the right side, fractured a rib, then passed through his right lung, aortic arch, and left lung before exiting his chest.

Memphis Police Lieutenant Darren Goods testified that on August 14, 2011, the case coordinator for the shooting in question sent him and other officers to the Super 8 Motel on Lamar Avenue after receiving information that the shooting suspect was at the motel. The motel's manager informed the officers of the location of the room in which the suspect and several other people were staying, and the officers knocked on the door to that room. Lieutenant Goods testified that while the officers were outside of the room, they heard the "distinctive sound" of someone moving the top of the water tank on the room's toilet. After someone let them into the room, Lieutenant Goods went to the room's bathroom and saw that the top of the toilet's tank was pushed to the side and a white cloth was inside the tank. Lieutenant Goods testified that he obtained a search warrant and had a crime scene officer retrieve the cloth from the tank. They discovered a semi-automatic handgun wrapped in the cloth. Lieutenant Goods said that one of the men in the room asked the police officers why they were there. Lieutenant Goods responded that they were there because of a shooting. Lieutenant Goods testified that appellant, "without any provocation[,] . . . said something to the effect, '[Y]eah, I was there. As I pulled up, the shots rang out' or 'they started shooting.'"

Memphis Police Officer David Payment testified that he was responsible for collecting the firearm located at the Super 8 Motel. He said that the handgun, with a full magazine, had a total capacity of sixteen rounds.

Tennessee Bureau of Investigation Special Agent Laura Hodge testified that she examined a gunshot residue swab collected from the victim's hands. She said that she did not find any gunshot residue but qualified her response by explaining the fragility of gunshot residue and how easily it disappears.

Memphis Police Officer Lee Walker testified that he responded to Ms. Brown's location the night of the shooting to collect evidence from her car. He photographed her broken windshield and a bullet fragment located on the front passenger seat.

Tennessee Bureau of Investigation Special Agent Eric Warren testified that he examined a pistol and eleven spent 9mm cartridges collected by the Memphis police in this case and determined that all eleven cartridges had been fired by the pistol. He also examined a bullet fragment recovered in this case and determined that it also had been fired by the same pistol.

The State rested its case-in-chief, and appellant rested his case without presenting any proof. Following deliberations, the jury convicted appellant of second degree murder (Count One), three counts of attempted second degree murder (Counts Two, Three, and Four), one count of misdemeanor reckless endangerment as a lesser-included offense of attempted second degree murder (Count Five), three counts of aggravated assault (Counts Six, Seven, and Eight), one count of assault as a lesser-included offense (Count Nine),

-4-

and three counts of employing a firearm during the commission of a dangerous felony (Counts Ten, Eleven, and Twelve). He was acquitted of one count of employing a firearm during the commission of a dangerous felony. The trial court merged the aggravated assault convictions into the corresponding attempted second degree murder convictions and merged the assault conviction into the reckless endangerment conviction.

The trial court held a sentencing hearing on August 25, 2014. At the hearing, the murder victim's father testified about the impact of his son's death on their family. Appellant's mother, Racquel Gonzalez, also testified. Ms. Gonzalez stated that appellant was twenty-five years old at the time of the hearing. His father had not been involved in his life, and he had not completed high school. Ms. Gonzalez recalled that appellant had been in trouble for truancy when he was younger and that he abused marijuana. Appellant's pre-sentence report was admitted into evidence.

For all of appellant's convictions, the trial court took into consideration his family history but did not find that a statutory mitigating factor applied. Regarding the second degree murder conviction, the trial court found that appellant had a previous history of criminal convictions beyond that necessary to establish his sentencing range and that he used a firearm during the commission of the offense. The trial court stated that it placed great weight on both factors. The trial court sentenced appellant to twenty years for second degree murder.

Regarding the attempted second degree murder convictions, the trial court found that the same factors were applicable but placed more emphasis on appellant's prior criminal history considering he was also convicted of employing a firearm during those offenses. The trial court found that no mitigating factors applied. The trial court sentenced appellant to ten years for each of the attempted second degree murder convictions.

Regarding the reckless endangerment conviction, a Class A misdemeanor, the trial court sentenced appellant to eleven months, twenty-nine days.

For the employing a firearm during the commission of a dangerous felony convictions, the trial court again found that appellant had a previous history of criminal convictions or behavior beyond that necessary to establish the sentencing range. The trial court also found that more than one victim was involved in each offense and that appellant had no hesitation about committing the offense when the risk to human life was high. The trial court sentenced appellant to six years for these convictions.

The trial court next considered whether appellant's sentences should be aligned consecutively. The court determined that appellant was a dangerous offender, stating that the circumstances of the offense—appellant's firing a gun into a crowd of people with no

justification—were aggravated and that an extended period of confinement was "necessary to protect society from this [appellant's] unwillingness to lead a productive lifestyle and [from his resorting] to criminal activity in furtherance of that anti-societal lifestyle." The court found that the length of appellant's sentences was reasonably related to the offenses for which he stood convicted. The court stated that appellant's sentences for his employing a firearm convictions were statutorily mandated to be consecutive; therefore, each sentence for appellant's three convictions for employing a firearm during the commission of dangerous felony would be served consecutively to the sentence for the corresponding felony, which in this case were appellant's three attempted second degree murder convictions.

The trial court further ordered that appellant serve the following sentences consecutively for a total of fifty-two years: second degree murder (Count One, twenty years); attempted second degree murder (Count Two, ten years); Count Two's corresponding employing a firearm during the commission of a dangerous felony (Count Ten, six years); attempted second degree murder (Count Three, ten years); and Count Three's corresponding employing a firearm during the commission of a dangerous felony (Count Eleven, six years). The trial court ordered that appellant's remaining attempted second degree murder sentence (Count Four, ten years) and its corresponding employing a firearm during the commission of a dangerous felony sentence (Count Twelve, six years) be served consecutively to each other by operation of law and concurrently with appellant's other sentences. Finally, the trial court ordered that appellant's sentence for reckless endangerment (Count Five; eleven months, twenty-nine days) be served concurrently with all other sentences. Thus, appellant's total effective sentence was fifty-two years.

Appellant's motion for new trial was heard and denied. Subsequently, appellant filed a timely notice of appeal.


II. Analysis

A. Evidentiary Issues

Appellant's first issue, presented in two parts, concerns the trial court's admission and exclusion of certain evidence. Appellant contends that the trial court should have disallowed testimony that someone shouted "Playboy Surenos" before the altercation and that the trial court should have allowed into evidence a photograph of the murder victim that had been overlaid with the word "Pelones." However, these arguments were not included in the motion for new trial that is in the appellate record. Arguments not included in a motion for new trial are waived. Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or

exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.").  The transcript of the motion indicates that an amended motion for new trial was given to the trial court on the day of the hearing, but no amended motion is included in the appellate record.  Moreover, defense counsel did not argue the issues orally but rather relied on the document that is not in the record.  It is the appellant's responsibility to prepare an adequate record for this court to address the issues.  *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993).  While the trial court considered at least part of the evidentiary issues now presented on appeal when it denied appellant's motion for new trial, without the argument put forth by appellant in the motion for new trial, the trial court's statements are without sufficient context.  Therefore, we must conclude that appellant has waived these evidentiary issues.

## B.  Sufficiency of the Evidence

Appellant challenges the sufficiency of the evidence supporting his conviction for second degree murder.  The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011).  To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 319.  This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both.  *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'"  *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).  In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact.  *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).  This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence.  *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).  Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts

from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

Second degree murder is defined by statute as "[a] knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). "To establish that a defendant committed a second degree murder, the State has the burden of proving beyond a reasonable doubt that (1) the defendant killed the victim, and (2) the defendant committed the killing with a "knowing" state of mind." *State v. Parker*, 350 S.W.3d 883, 904 (Tenn. 2011). The criminal code states that "[a] person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b). Therefore, "the proof to support the mens rea element of second degree murder needs to demonstrate beyond a reasonable doubt only that the accused 'knew that his or her actions were reasonably certain to cause the victim's death.'" *Parker*, 350 S.W.3d at 904 (quoting *State v. Brown*, 311 S.W.3d 422, 432 (Tenn. 2010)). "A person can act knowingly irrespective of his or her desire that the conduct or result will occur." *State v. Gray*, 960 S.W.2d 598, 604 (Tenn. Crim. App. 1997).

Viewed in the light most favorable to the State, the proof at trial showed that appellant, while sitting in his vehicle, fired a semi-automatic pistol towards a crowd of people who were involved in an altercation. Appellant himself had not been involved in the melee. One bullet hit the victim in his back, killing him. Multiple eyewitnesses identified appellant as the shooter. Six spent shell casings were found at the scene, and the weapon that fired those shells was discovered hidden in a toilet tank in the motel room where police arrested appellant. Appellant argues that there was no proof that he had any motive to kill the victim, but that type of proof is not required for a second degree murder conviction. The proof was sufficient for a jury to conclude beyond a reasonable doubt that appellant, by firing a pistol into a crowd of people, knew that his actions were reasonably certain to cause the victim's death. Therefore, we affirm appellant's conviction for second degree murder.

## C. Sentencing

For his final issue, appellant contends that the trial court erred by sentencing appellant to the middle of his sentencing range and to partially consecutive sentences. He argues that the trial court should have but did not consider any mitigating factors despite the testimony during his sentencing hearing.

### i. Sentence Length

In determining an appropriate sentence, a trial court must consider the following

factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114, -210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. §

40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In this case, the trial court heard testimony about appellant's family life—the absence of his father, his truancy from school, and his drug use—but determined that appellant's family history did not rise to the level of a mitigating factor. The trial court stated that it nonetheless took appellant's family history into consideration when determining appellant's sentences. The record shows that appellant's sentences were within the appropriate range and in compliance with the purposes and principles of our sentencing statutes.

## ii. Consecutive Sentencing

Although appellant's brief did not expressly raise an issue as to his consecutive sentencing, he nevertheless mentioned his aggregate sentence length. Therefore, we will address the propriety of his sentence alignment. Prior to 2013, on appellate review of sentence alignment issues, courts employed the abuse of discretion standard of review. *See State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999). Our supreme court has since extended the standard of review enunciated in *State v. Bise*, abuse of discretion with a presumption of reasonableness, to consecutive sentencing determinations. *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013); *Bise*, 380 S.W.3d 682, 707 (Tenn. 2012) (modifying standard of review of within-range sentences to abuse of discretion with a presumption of reasonableness); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying abuse of discretion with a presumption of reasonableness to review of alternative sentencing determinations by the trial court). Thus, the presumption of reasonableness gives "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b) . . . ." *Pollard*, 432 S.W.3d at 861.

The procedure used by the trial courts in deciding sentence alignment is governed by Tennessee Code Annotated section 40-35-115, which lists the factors that are relevant to a trial court's sentencing decision. Imposition of consecutive sentences must be "justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(1). The length of the resulting consecutive sentence must be "no greater than that deserved for the offense committed." *Id.* § 40-35-103(2). The court may order consecutive sentences if it finds by a preponderance of the evidence that one or more of the following seven statutory criteria exists:

(1)     The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2)     The defendant is an offender whose record of criminal activity is extensive;

(3)     The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4)     The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5)     The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)     The defendant is sentenced for an offense committed while on probation; or

(7)     The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b)(1)-(7).

The *Pollard* court reiterated that "[a]ny one of these grounds is a sufficient basis for the imposition of consecutive sentences." *Pollard*, 432 S.W.3d at 862 (citing *State v. Dickson,* 413 S.W.3d 735, 748 (Tenn. 2013)). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.*

Of the seven statutory factors, the trial court in this case found that one factor applied: (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. We note that the trial court properly engaged in a discussion of the *Wilkerson* factors that must accompany application Tennessee Code Annotated section 40-35-115(b)(4). *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995). Pursuant to *Wilkerson*, before imposing consecutive sentences based upon the defendant's status as a

-11-

dangerous offender, the trial court "must conclude that the evidence has established that the aggregate sentence is 'reasonably related to the severity of the offenses' and 'necessary in order to protect the public from further criminal acts.'" *Pollard*, 432 S.W.3d at 863 (quoting *Wilkerson*, 905 S.W.2d at 938).

In this case, the trial court found that the circumstances of the offense were aggravated considering that appellant fired a gun into a crowd of people, that an extended period of confinement was necessary to protect the public from "[appellant's] unwillingness to lead a productive lifestyle and [from his resorting] to criminal activity in furtherance of that anti-societal lifestyle," and that the length of the sentences was reasonably related to the severity of the offenses. Therefore, we conclude that the trial court did not abuse its discretion by imposing partially consecutive sentencing. Appellant has failed to show that his sentences were erroneous, and we affirm the sentences as set by the trial court.

## D. Clerical Errors

The uniform judgment documents for Counts Two through Four erroneously indicate that appellant was convicted of three counts of attempted first degree murder. Therefore, we remand these counts to the trial court for correction of the documents to show that appellant was charged with and convicted of three counts of attempted second degree murder. In addition, Counts Ten, Eleven, and Twelve erroneously indicate that appellant was convicted of employing a firearm with intent to commit a felony. These three counts should be corrected to show that appellant was charged with and convicted of employing a firearm during the commission of a dangerous felony. Counts Ten, Eleven, and Twelve should also show that appellant's release eligibility is 100%.

## CONCLUSION

Based on the record, the applicable law, and the briefs of the parties, we affirm the judgments of the trial court, as modified on remand.

_____
ROGER A. PAGE, JUDGE

-12-